1   **JASSY VICK CAROLAN** LLP
    JEAN-PAUL JASSY, Cal Bar No. 205513
2     jpjassy@jassyvick.com
    JORDYN OSTROFF, Cal. Bar No. 313652
3     jostroff@jassyvick.com
    355 South Grand Avenue, Suite 2450
4   Los Angeles, California 90071
    Telephone:     310-870-7048
5   Facsimile:     310-870-7010

6   Attorneys for Moving Party Journalist
    KENNETH JACOBY
7

8    ROB BONTA
     Attorney General of California
9    JULIE A. MALONE
     Supervising Deputy Attorney General
10   VICKIE P. WHITNEY
     Deputy Attorney General
11   State Bar No. 145316
       1300 I Street, Suite 125
12     P.O. Box 944255
       Sacramento, CA 94244-2550
13     Telephone: (916) 210-7520
       Fax: (916) 322-8288
14     E-mail: Vickie.Whitney@doj.ca.gov
     *Attorneys for Responding Party*
15

16                  **UNITED STATES DISTRICT COURT**

17            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

18   KENNETH JACOBY,                    Case No. 2:23-cv-02848-KJM-AC

19                  Moving Party,       *Related to E.D. Cal. Case No. 2:23-mc-00403-*
                                        *KJM-AC*
20         vs.
                                        *Pending in the Middle District of Louisiana*,
21   BOARD OF SUPERVISORS OF THE        *Case No. 3:22-cv-00338-BAJ-SDJ*
     UNIVERSITY OF LOUISIANA SYSTEM,
22                                      **JOINT STATEMENT REGARDING**
                    Responding Party.   **DISCOVERY DISAGREEMENT**
23                                      **CONCERNING DEPOSITION SUBPOENA**
                                        **TO JOURNALIST KENNETH JACOBY**
24
                                        Hearing Date:     January 31, 2024
25                                      Time:             10:00am
                                        Courtroom:        26
26

27

28

                                                           JOINT STATEMENT

# TABLE OF CONTENTS

**Page**

I.  DETAILS OF MEET AND CONFER EFFORTS ................................................. 1

II.  THE NATURE OF THE ACTION AND THE FACTUAL DISPUTES ............................. 2

III.  CONTENTIONS OF EACH PARTY AS TO EACH CONTESTED ISSUE AND
MEMORANDUM OF EACH PARTY'S RESPECTIVE ARGUMENTS ........................... 3

   A.  Kenneth Jacoby's Memorandum of Arguments and Legal Authorities .................... 3

      1.  The Information Sought by the Subpoena is Barred by Issue Preclusion ....... 5

      2.  The Deposition Subpoena Seeks Unpublished Newsgathering Information
      Protected from Disclosure by the First Amendment ..................................... 8

         a.  ULS Has Not Exhausted Alternative Sources .................................... 9

         b.  The Deposition Subpoena Is Cumulative with Other Discovery ...... 11

         c.  The Information Sought Is Not "Clearly Relevant" to a Specific
         Issue ................................................................................................. 12

      3.  Jacoby's Newsgathering Information Is Also Protected Under Common
      Law ................................................................................................................. 13

      4.  Jacoby Is Further Protected Under California's Shield Law ........................ 14

   B.  ULS Board's Memorandum of Arguments and Legal Authorities .......................... 15

      1.  Overview of ULS's Position .......................................................................... 15

      2.  Procedural Background .................................................................................. 17

      3.  Jacoby's Deposition Should be Ordered to Establish What Information
      He Relayed to Doe before His Article was Published ................................. 19

         a.  Information to be obtained from the deposition is unavailable
         from other sources .......................................................................... 21

         b.  Information to be obtained from the deposition is not cumulative .. 22

         c.  The information to be obtained in the deposition is clearly
         relevant to important issues in this case .......................................... 22

      4.  Jacoby's Deposition Should be Ordered to Audit the Accuracy of the
      Information Included in His Article ............................................................. 23

      5.  Summary of ULS's Position .......................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
  575 U.S. 138 (2015) ............................................................................................5

*Baker v. F&F Investment*,
  470 F.2d 778 (2d Cir. 1972) .............................................................................13

*Branzburg v. Hayes*,
  408 U.S. 665 (1972) .......................................................................................8, 13

*Carey v. Hume*,
  492 F.2d 631 (D.C. Cir. 1974) ...........................................................................9

*Carushka, Inc. v. Premiere Prods., Inc.*,
  No. CV 87 02356 DT (JRX), 1989 WL 253565 (C.D. Cal. Sep. 1, 1989) ...................10, 13

*Crowe v. County of San Diego*,
  242 F. Supp. 2d 740 (S.D. Cal. 2003) ...............................................11, 20, 21, 22

*Disimone v. Browner*,
  121 F.3d 1262 (9th Cir. 1997) ............................................................................7

*Evans v. Cal. Comm'n on Peace Officers Standards & Training*,
  No. 2:15-cv-01951-MCE-DB, 2023 WL 8091823 (E.D. Cal. Nov. 21, 2023) .......................5

*F. Marc Schaffel Prods., LLC v. TMZ Prods., Inc.*,
  No. CV-10-01306-GHK, 2010 WL 11549388 (C.D. Cal. Dec. 16, 2010) ...........................10

*General Teamsters Local #439 v. Leprino Foods Co.*,
  No. 2:21-cv-00563-MCE-CKD, 2022 WL 88480 (E.D. Cal. Jan. 7, 2022)...........................7

*Gonzales v. NBC*,
  194 F.3d 29 (2d Cir. 1999) .................................................................................9

*Gorenc v. Salt River Project Agric. Improvement & Power District*,
  869 F.2d 503 (9th Cir. 1989)............................................................................14

*Hammami v. Barr*,
  No. 1:19-cv-00471-LJO-EPG, 2019 WL 7454412 (E.D. Cal. Dec. 9, 2019) ......................6

*Harbert v. Priebe*,
  466 F. Supp. 2d 1214 (N.D. Cal. 2006) .............................................................10

*Jacoby v. Board of Supervisors of the University of Louisiana System*,
  No. 2:23-mc-00403-KJM-AC (E.D. Cal.) ("*Jacoby I*")......................1, 3, 4, 6, 7, 14

*Jaffee v. Redmond*,
  518 U.S. 1 (1996) ..............................................................................................13

*Jane Doe v. Board of Supervisors of the University of Louisiana System, et al.*,
  No. 22-cv-00338-BAJ-SDJ ............................................................................1, 15

*Janjua v. Neufeld*,
  933 F.3d 1061 (9th Cir. 2019)..........................................................................6, 7

*Jimenez v. City of Chicago,*
    733 F. Supp. 2d 1268 (W.D. Wash. 2010) ............................................................. 8

*Krase v. Graco Children Prod., Inc.,*
    79 F.3d 346 (2d Cir. 1996) ..................................................................................... 12

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,*
    89 F.R.D. 489 (C.D. Cal. 1981) ....................................................................... 10, 13

*Maciel v. C.I.R.,*
    489 F.3d 1018 (9th Cir. 2007) ................................................................................. 7

*Mitchell v. Sup. Ct.,*
    37 Cal. 3d 268 (1984) ............................................................................................ 14

*New York Times Co. v. Sup. Ct.,*
    51 Cal. 3d 453 (1990) ...................................................................................... 14, 15

*Oyeniran v. Holder,*
    672 F.3d 800 (9th Cir. 2012) ............................................................................... 6, 7

*Peterson v. Clark Leasing Corp.,*
    451 F.2d 1291 (9th Cir. 1971) ................................................................................. 6

*Playboy Enterprises, Inc. v. Sup. Ct.,*
    154 Cal. App. 3d 14 (1984) .............................................................................. 14, 15

*Robinson v. Brown,*
    No. 2:12-cv-1776 MCE DAD, 2014 WL 1779460 (E.D. Cal. May 5, 2014) ......... 7

*Shoen v. Shoen,*
    5 F.3d 1289 (9th Cir. 1993) (*Shoen I*) ........................................................... 8, 9, 10

*Shoen v. Shoen,*
    48 F.3d 412 (9th Cir. 1995) (*Shoen II*) ........................ 4, 6, 9, 11, 12, 13, 19, 20, 21, 22, 23

*In re Stratosphere Corp. Secs. Litig.,*
    183 F.R.D. 684 (D. Nev. 1999) ............................................................................ 10

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ................................................................................................ 6

*United States v. Burke,*
    700 F.2d 70 (2nd Cir 1983) ................................................................................... 13

*United States v. Cuthbertson,*
    651 F.2d 189 (3d Cir. 1981) .................................................................................... 9

*United States v. Fields,*
    663 F.2d 880 (9th Cir. 1981) ................................................................................. 12

*Wright v. Fred Hutchinson Cancer Rsch. Ctr.,*
    206 F.R.D. 679 (W.D. Wash. 2002) ..................................................................... 11

*Zerilli v. Smith,*
    656 F.2d 705 (D.C. Cir. 1981) .............................................................................. 13

**U.S. Constitution**

First Amendment ........................................................................1, 3, 5, 6, 7, 8

**California Constitution**

Article 1, § 2(b) ........................................................................4, 5, 14, 15

**Federal Rules**

Fed. R. Civ. Proc. 45 ........................................................................5
Fed. R. Evid. 501 ........................................................................5, 13

**California State Statutes**

Cal. Evid. Code § 1070 ........................................................................5

**Other Authorities**

*USA Today* "Six women reported a Louisiana college student for sexual misconduct. No one connected the dots." May 26, 2021 ........................................................2, 3, 15, 24

JOINT STATEMENT

This Joint Statement concerns Journalist Kenneth Jacoby's December 6, 2023 Motion for a Protective Order regarding the deposition subpoena with which he was served on November 22, 2023, as modified on November 28, 2023, by the Board of Supervisors of the University of Louisiana System ("ULS"), which is a defendant in *Jane Doe v. Board of Supervisors of the University of Louisiana System, et al.*, No. 22-cv-00338-BAJ-SDJ, pending in the U.S. District Court for the Middle District of Louisiana.

## I.   DETAILS OF MEET AND CONFER EFFORTS[1]

On December 21, 2023, in a related case, No. 23-mc-00403-KJM-AC, this Court quashed a document subpoena to Jacoby. On January 3, 2024, counsel conferred regarding ULS's Deposition Subpoena to Jacoby.

Jacoby is a professional journalist who, at all relevant times, worked for the newspaper *USA Today*. His only connection to the underlying case is that he interviewed Jane Doe for a newspaper article. Jacoby objects to the deposition subpoena, arguing that—like the document subpoena—it would violate his rights and privileges under the First Amendment, the California Constitution, and the common law not to be compelled to produce unpublished newsgathering information. Jacoby argues that much, if not all, of the information ULS seeks by the deposition subpoena is barred by the doctrine of issue preclusion, given the Court's recent order quashing the document subpoena. After the Court issued its order quashing the document subpoena, counsel for Jacoby asked counsel for ULS to withdraw the deposition subpoena, but ULS declined to do so. Jacoby also offered, in lieu of a deposition, to provide a declaration authenticating the published article at issue, but counsel for ULS stated that such a declaration was insufficient. Jacoby seeks a protective order regarding the deposition, precluding any inquiry and any need to furnish any testimony or information constituting or concerning Jacoby's unpublished newsgathering materials, sources of information, confidential information, or newsgathering techniques.

---

[1] Meet and confer efforts are set forth in the accompanying Declaration of Catherine S. Giering, Louisiana counsel for the Board of Supervisors of the University of Louisiana System (ULS), and the Declaration of Jean-Paul Jassy, counsel for Kenneth Jacoby.

1   ULS is one of the public university systems in the State of Louisiana.  For purposes of the

2   underlying matter, ULS encompasses University of Louisiana at Lafayette ("ULL") and Louisiana

3   Tech University ("Tech"), two of the universities implicated in not only Plaintiff Jane Doe's

4   allegations, but also in Jacoby's May 26, 2021, published piece in *USA Today*. Jacoby interviewed

5   Jane Doe for his article. ULS asserts that Jacoby issued FOIA requests to Tech and ULL, and

6   included Doe's story and information gained from Tech and ULL in the published article.

7   Doe asserts that she relied on the published article, including the information written by

8   Jacoby about Tech and ULL, in bringing her suit against the defendants in the underlying matter.

9   ULS contends it is published information about which it seeks to depose Jacoby. ULS asserts that

10  the identity of Jacoby's source and the information contained in the published article are known.

11  ULS argues that it should not be barred from taking the deposition of Jacoby regarding the

12  published article, his interview of Doe, what he relayed to Doe and when, the information he

13  obtained from Tech and ULL, and the accuracy of information published in his article, which Doe

14  wholly and solely relies upon in her complaint, versus the actual information obtained from Tech

15  and ULL. ULS asserts that the information sought from Jacoby is testimony can only be obtained

16  from Jacoby and is relevant to ULS's defenses to Doe's claims in the underlying matter. ULS

17  argues that it is possible to allow the deposition to go forward without inquiring into unpublished

18  newsgathering materials, sources of information, or newsgathering techniques. Jacoby disagrees.

19  While Jacoby argues that the doctrine of issue preclusion applies to the information ULS

20  seeks from Jacoby in his deposition, ULS disagrees. ULS claims that even if materials were

21  produced in response to the records subpoena, ULS would still have pursued Jacoby's deposition

22  concerning questions about the veracity of the Article's content, and communication content with

23  Doe that Doe cannot recollect. For the reasons outlined below, ULS contends that its request for

24  Jacoby's deposition seeks different information than that requested in its subpoena for records. ULS

25  therefore contends issue preclusion does not apply.

26  **II.   THE NATURE OF THE ACTION AND THE FACTUAL DISPUTES**

27  Jacoby wrote a May 26, 2021 article published in *USA Today*, "Six women reported a Louisiana

28  college student for sexual misconduct. No one connected the dots."  ("the Article").  A year after

the Article's publication, Jane Doe, one of the women who reported Victor Daniel Silva to ULS for assault, filed her lawsuit in the United States District Court for the Middle District of Louisiana against ULS and others, asserting claims for Title IX and negligence under Louisiana state law. The Complaint credits the Article with making Doe aware of the facts underlying her claims. Jassy Decl. ¶ 3, Ex. 2. ULS disputes this allegation, among others, and seeks discovery from Jacoby to support its argument that Doe's claims are time-barred by the statute of limitations (also referred to as "prescription" within the federal and state courts of Louisiana). Jacoby contests all discovery of unpublished newsgathering information on reporter's privilege/shield law grounds. ULS contends that the testimony sought from Jacoby is discoverable for the reasons summarized above and set forth below.

III.    **CONTENTIONS OF EACH PARTY AS TO EACH CONTESTED ISSUE AND MEMORANDUM OF EACH PARTY'S RESPECTIVE ARGUMENTS**

   A.    <u>**Kenneth Jacoby's Memorandum of Arguments and Legal Authorities**</u>

Kenneth Jacoby is a non-party journalist who wrote a carefully researched article published by *USA Today* in May 2021 that exposed a failure among universities and law enforcement to protect unsuspecting women from a known serial predator: "Six women reported a Louisiana college student for sexual misconduct. No one connected the dots." *See* Jassy Decl. ¶ 2, Ex. 1.  The following year, Jane Doe brought a Title IX lawsuit in the Middle District of Louisiana against those institutions for failing to protect victims from Victor Daniel Silva.  In October 2023, Defendant ULS issued a sweeping subpoena *duces tecum* to Jacoby.  Jacoby informed ULS that Jacoby's unpublished newsgathering materials are protected under the reporter's privilege and shield laws, but ULS insisted on pursuing document discovery from Jacoby to explore their theory that Doe's claims are time-barred, forcing Jacoby to open *Jacoby v. Board of Supervisors of the University of Louisiana System*, Case No. 2:23-mc-00403-KJM-AC (E.D. Cal.) (hereinafter, "*Jacoby I*") and file a motion to quash. *Id.* ¶ 5.  On December 21, 2023, this Court granted Jacoby's motion to quash on the grounds that ULS failed to make the showing necessary to overcome Jacoby's First Amendment-based journalist privilege.  *See* Jassy Decl., Ex. 5.

1    Even after Jacoby raised with ULS the privilege and shield law issues that barred its

2    document subpoena, and while the parties briefed Jacoby's motion to quash that subpoena, ULS

3    sought still more discovery from Jacoby.  ULS issued a subpoena for Jacoby's deposition (the

4    "Deposition Subpoena").  Jassy Decl. ¶ 6, Ex. 4.  Surprisingly, ULS refused to withdraw the

5    Deposition Subpoena after the Court quashed the document subpoena in *Jacoby I.*  Jassy Decl. ¶ 8,

6    Ex. 7.  Rather, ULS insists that it is entitled to seek the same unpublished information (i.e,

7    communications between Doe and Jacoby) via deposition that the Court already held to be

8    privileged in the context of a document subpoena.  ULS also claims that Jacoby's deposition is

9    necessary to explore alleged discrepancies between the Article and the materials ULS produced to

10   Jacoby in response to his FOIA requests (such as whether Silva transferred or withdrew from ULS

11   schools)—even though ULS already has both the Article and the produced materials in its

12   possession, and any purported discrepancies have no bearing on Jane Doe's claims against ULS.

13   Jassy Decl. ¶ 9.  Again, ULS forced Jacoby to open a new case to protect his rights as a journalist

14   because, like the quashed document subpoena, the Deposition Subpoena contravenes Jacoby's

15   rights under the robust protections of the U.S. Constitution, California law, and the common law.

16   Under Ninth Circuit law, compelled disclosure of unpublished newsgathering material is

17   only permissible "upon a showing that the requested material is: (1) unavailable despite exhaustion

18   of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important

19   issue in the case."  *Shoen v. Shoen* ("*Shoen II*"), 48 F.3d 412, 416 (9th Cir. 1995).  As an initial

20   matter, to the extent ULS seeks Jacoby's deposition for the same reasons it sought documents from

21   him, it is collaterally estopped from re-litigating whether it can make the necessary showing to

22   overcome Jacoby's privilege.  But even if it were not estopped from re-arguing the issue, ULS

23   cannot make the showing necessary to overcome the privilege for the same reasons it could not

24   make the showing as to the document subpoena:  ULS did not exhaust its alternative sources and

25   seeks discovery from Jacoby cumulative with what it has already obtained from Jane Doe to explore

26   legal theories that are entirely speculative or lack clear relevance to important issues in the

27   underlying case.  To the extent ULS seeks Jacoby's testimony regarding Jacoby and Doe's

28   communications prior to the Article's publication, such testimony is not clearly relevant because it

-4-                                                                      JOINT STATEMENT

would only serve to either corroborate or impeach Jane Doe's discovery, and there are no facts that indicate Jacoby ever shared information with Jane Doe to trigger the statute of limitations.  And to the extent ULS seeks Jacoby's testimony to examine alleged discrepancies between his Article and ULS's documents, ULS has articulated no theory of how such information could be relevant.

Moreover, under California's state reporter's shield law, Jacoby is protected by an *absolute immunity* in the civil litigation context, meaning no argument could overcome the state constitutional protections of his unpublished newsgathering materials and confidential sources.  Cal. Const., art. I, § 2(b); Cal. Evid. Code 1070.  Through federal common law and Federal Rule of Evidence 501, the California Shield Law is relevant here because Jane Doe also brought state law negligence claims in her underlying action.  In addition, the Deposition Subpoena is unduly burdensome to Jacoby under Federal Rule of Civil Procedure 45.  All of the information ULS seeks from nonparty Jacoby is available through other sources—including party sources—so there is no reason to burden him with the time and expense of preparing and sitting for a deposition.  For all these reasons, a protective order should issue that precludes any inquiry into and any need to furnish any testimony or information constituting or concerning Jacoby's unpublished newsgathering materials, sources of information, confidential information, or newsgathering techniques.

**1. The Information Sought by the Subpoena is Barred by Issue Preclusion**

The Court already concluded that Jacoby did not have to produce information to ULS "regarding what Doe discussed with Jacoby prior to the article's publication," because the document subpoena seeking that information would "invade Jacoby's journalistic protections under the First Amendment."  Jassy Decl., Ex. 5 at 2, 4.  ULS believes it can circumvent that order by seeking the same information via this deposition subpoena.  It cannot.  The doctrine of issue preclusion bars ULS from re-litigating issues already decided between ULS and Jacoby, even if the issue now arises in the context of a deposition subpoena rather than a document subpoena.  *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) ("The idea is straightforward: Once a court has decided an issue, it is forever settled as between the parties.") (cleaned up); *Evans v. Cal. Comm'n on Peace Officers Standards & Training*, No. 2:15-cv-01951-MCE-DB, 2023 WL 8091823, at * 9 (E.D. Cal. Nov. 21, 2023) (issue preclusion bars re-litigation of issues "even if the

1    issue recurs in the context of a different claim") (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892

2    (2008)).  Issue preclusion applies if four conditions are met: "(1) the issue at stake was identical in

3    both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there

4    was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the

5    merits." *Id.* (quoting *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019)).  Each of those

6    conditions are present here.

7         First, the issue presented in *Jacoby 1* is legally and factually identical to the issue at stake

8    here.  Here, as in *Jacoby I*, ULS issued a subpoena to Jacoby seeking information concerning

9    Jacoby and Doe's communications, including unpublished information *about* those

10   communications.  Here, as in *Jacoby I*, the question is whether ULS has made the showing required

11   to overcome Jacoby's First Amendment-based journalist privilege, such that Jacoby can be

12   compelled to provide the information sought.  The legal standard used to make that determination is

13   the same three-factor test here as it was in *Jacoby I.  See Shoen II*, 48 F.3d at 416 (articulating three-

14   factor showing necessary to overcome journalist privilege).  Because ULS seeks the same

15   information from Jacoby for the same purpose as it did in *Jacoby I*, and because the same legal

16   standard is applicable both here and in *Jacoby I* to determine if ULS may obtain that information,

17   the issues at stake are identical.  *See Hammami v. Barr*, No. 1:19-cv-00471-LJO-EPG, 2019 WL

18   7454412, at *7 (E.D. Cal. Dec. 9, 2019) ("Courts look at the legal standard applicable in both

19   actions, as well as the 'factual setting'" to determine identicality of issues) (quoting *Peterson v.

20   Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971)).

21        Second, the issue was "actually litigated" because it was "raised, contested, and submitted

22   for determination" in *Jacoby I.  Janjua*, 933 F.3d at 1066.  In *Jacoby I*, Jacoby raised the First

23   Amendment privilege in its motion to quash, *see* Jassy Decl., Ex. 3, and then the parties submitted

24   their opposing arguments and evidence on the issue, *see* Jt. Stmt, *Jacoby I*, ECF No. 11 (Nov. 29,

25   2023).  Based on that argument and evidence, the Court determined that, no, ULS did not make the

26   necessary showing, because the information sought was "unnecessary and cumulative," and more

27   speculative than "actual[ly] relevant."  Jassy Decl., Ex. 5 at 4–5.  That judgment was final. *See*

28   Jassy Decl., Ex. 6.  As such, the issue was "actually litigated."  *See, e.g.*, *Oyeniran v. Holder*, 672

1    F.3d 800, 806 (9th Cir. 2012) (explaining that issue was "actually litigated" because petitioner

2    presented evidence on the issue, the government challenged the claim "[a]t every stage of the . . .

3    proceedings," and the judge decided the issue); *Disimone v. Browner*, 121 F.3d 1262, 1268 (9th Cir.

4    1997) (explaining that issue was actually litigated because the parties raised and contested it and the

5    court necessarily decided it by reaching its decision).

6         Third, in *Jacoby I*, Jacoby and ULS submitted a joint statement regarding Jacoby's motion

7    to quash, with over 200 pages of supporting evidence.  *See* Jt. Stmt, *Jacoby I*, ECF No. 11 (Nov. 29,

8    2023).  The procedures Jacoby and ULS are using here to litigate the Deposition Subpoena are the

9    same.  And, the stakes for ULS in the underlying litigation in Louisiana remain the same now as

10    they did during litigation of *Jacoby I.  See Robinson v. Brown*, No. 2:12-cv-1776 MCE DAD, 2014

11    WL 1779460, at \*9 (E.D. Cal. May 5, 2014) (in determining whether party had a "full and fair"

12    opportunity to litigate an issue, courts examine whether the procedural opportunities and parties'

13    incentives to litigate the issue in the two proceedings are the same) (citing *Maciel v. C.I.R.*, 489

14    F.3d 1018, 1023 (9th Cir. 2007)).

15         Fourth, the last condition is met because the determination of whether ULS made the

16    showing required to overcome Jacoby's journalist privilege was "central" to the Court's decision on

17    whether that privilege applied to prevent ULS from compelling the information it sought*.  See*

18    *General Teamsters Local #439 v. Leprino Foods Co.*, No. 2:21-cv-00563-MCE-CKD, 2022 WL

19    88480, at \*5 (E.D. Cal. Jan. 7, 2022); *see also Janjua*, 933 F.3d at 1066 (issue is "necessarily

20    decided" if "it is necessary to the ultimate determination").

21         Because each of the four conditions for issue preclusion are met, ULS is collaterally

22    estopped from relitigating the issue of whether Jacoby's First Amendment-based journalist privilege

23    bars disclosure of Jacoby's unpublished information, including communications with Doe.[2]

24

25

26    [2] That ULS now claims it also needs discovery from Jacoby because of purported discrepancies
between the Article and materials ULS provided to him for the Article does not change the

27    collateral estoppel analysis.  The "introduction of new evidence on a matter previously resolved is
not an exception to collateral estoppel."  *Oyeniran*, 672 F.3d at 807 (applying issue preclusion).

28

          JOINT STATEMENT

1

2. **The Deposition Subpoena Seeks Unpublished Newsgathering Information**

2

**Protected from Disclosure by the First Amendment**

3   The information sought by the Deposition Subpoena is protected by several legal doctrines,

4   the most relevant of which arises under the First Amendment.  For the reasons set forth above, ULS

5   is collaterally estopped from relitigating whether the First Amendment protects the information it

6   seeks from Jacoby, but even if the issue preclusion doctrine did not apply, ULS still cannot make

7   the showing necessary to overcome Jacoby's First Amendment rights.  Ultimately, ULS is still

8   seeking information about the content and timing of communications that were not published in the

9   Article.  As such, the First Amendment-based journalist privilege applies.

10   Over a half century ago, the United States Supreme Court in *Branzburg v. Hayes*, 408 U.S.

11   665, 681 (1972), expressly recognized that newsgathering activities qualify for First Amendment

12   protection: "Without some protection for seeking out the news, freedom of the press could be

13   eviscerated."  *Id.*  The Ninth Circuit[3] has held that *Branzburg* established a constitutionally based

14   qualified privilege for journalists to resist the disclosure of information gathered or obtained during

15   the course of newsgathering activities: "Rooted in the First Amendment, the privilege is a

16   recognition that society's interest in protecting the integrity of the newsgathering process, and in

17   ensuring the free flow of information to the public, is an interest 'of sufficient social importance to

18   justify some incidental sacrifice of sources of facts needed in the administration of justice.'"  *Shoen*

19   *v. Shoen* (*"Shoen I"*), 5 F.3d 1289, 1292 (9th Cir. 1993) (internal citations omitted).  In holding that

20   the qualified privilege attached to subpoenaed, unpublished, non-confidential information obtained

21   by a book author, the Ninth Circuit stated: "the journalist's privilege recognized in *Branzburg* [is] a

22   'partial First Amendment shield' that protects journalists against compelled disclosure in all judicial

23   proceedings, civil and criminal alike."  *Id.*   The "journalist's privilege applies to a journalist's

24   resource materials even in the absence of the element of confidentiality."  *Id.* at 1295.

25

26   [3] Third-party subpoenas are assessed under the law of the jurisdiction enforcing them.  *Jimenez v.*
*City of Chicago*, 733 F. Supp. 2d 1268, 1271 (W.D. Wash. 2010) (in a federal question case,

27   applying Ninth Circuit, rather than Seventh Circuit, law invoking the reporter's privilege to grant a
Washington state journalist's Rule 45 motion to quash while litigation proceeded in Illinois).

28

1          These public policy concerns apply to the compelled disclosure of information concerning

2     underlying resource materials, such as research and conversations with sources, which is precisely

3     the type of material sought here.  *Shoen II*, 48 F.3d at 416; *Shoen I*, 5 F.3d at 1295.  This is due in

4     part to the fact that "court-enforced access to journalistic resources would risk the symbolic harm of

5     making journalists appear to be an investigative arm of the judicial system, the government, or

6     private parties."  *Gonzales v. NBC*, 194 F.3d 29, 35 (2d Cir. 1999); *Shoen I*, 5 F.3d at 1294–95

7     (identifying a number of harms, including the risk of appearing as a "research tool" of the

8     government or private parties).  The Ninth Circuit has also recognized the substantial burden that

9     compliance with subpoenas can impose on reporters, noting that the "frequency of subpoenas would

10    not only preempt the otherwise productive time of journalists and other employees but measurably

11    increase expenditures for legal fees."  *Shoen I*, 5 F.3d at 1295 (citation omitted).

12         The Ninth Circuit holds that the privilege applies broadly to protect both confidential *and*

13    *non-confidential* material and information.  *Shoen I*, 5 F.3d at 1295; *Shoen II*, 48 F.3d at 414.

14    Disclosure of confidential information or non-confidential unpublished information may be

15    compelled by a civil litigant "only upon a showing that the requested material is: (1) unavailable

16    despite exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant

17    to an important issue in the case."  *Shoen II*, 48 F.3d at 416.  The party seeking to overcome the

18    privilege "must [make] a showing of actual relevance; a showing of potential relevance will not

19    suffice."  *Id.*  The three-part constitutional test under *Shoen II* is necessarily a "high hurdle against

20    compelled disclosure from third party journalists."  *Harbert v. Priebe*, 466 F. Supp. 2d 1214 (N.D.

21    Cal. 2006).  ULS cannot surmount that hurdle with respect to the Deposition Subpoena.

22              **a.   ULS Has Not Exhausted Alternative Sources**

23         Compelled disclosure from a journalist must be a "last resort after pursuit of other

24    opportunities has failed."  *Shoen I*, 5 F.3d at 1297 (quoting *Carey v. Hume*, 492 F.2d 631 (D.C. Cir.

25    1974)).  In *United States v. Cuthbertson*, 651 F.2d 189, 196 (3d Cir. 1981), the Third Circuit held

26    that the criminal defendants had not satisfied the element of proving that the "only practical access

27    to the information" sought was from outtakes of interviews, noting that the defendants could

28    "themselves interview these same interviewees, whose identity they know, to obtain the desired

1    information."  *See also F. Marc Schaffel Prods., LLC v. TMZ Prods., Inc.*, No. CV-10-01306-GHK,

2    2010 WL 11549388, at *4 (C.D. Cal. Dec. 16, 2010) (reporter's privilege could not be overcome

3    because the plaintiff had not yet exhausted alternative sources through depositions, declarations, or

4    other third party discovery); *Harbert*, 466 F. Supp. 2d at 1216 (rejecting motion to compel

5    reporter's compliance with subpoena where subpoenaing party relied "only on the purported

6    inadequacy" of party's discovery responses and did not show that "they ha[d] made other efforts to

7    obtain [the] information"); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 489,

8    492–95 (C.D. Cal. 1981) (quashing subpoenas because of a failure to show an exhaustion of other

9    means of obtaining information).

10        Here, to the extent ULS does not already have the information it seeks, *see infra* Section

11   III.A.2.b, it has not exhausted alternative sources for the information.[4]  Without invading the

12   reporter's privilege, ULS could subpoena and bring motions to compel, if needed, against Jane Doe,

13   phone    ompany(ies), cloud backup account(s), and email service provider(s) to confirm the dates

14   and contents of communications between Jane Doe and Jacoby.  *See, e.g.*, Jassy Decl. ¶ 5(c).  *See*

15   *Carushka, Inc. v. Premiere Prods., Inc.*, No. CV 87 02356 DT (JRX), 1989 WL 253565, at *3 (C.D.

16   Cal. Sep. 1, 1989) (denying discovery where subpoenaing parties "failed to make any motions to

17   compel . . . . Defendants own oversight is not an adequate reason to subvert the broad and

18   substantial constitutionally-derived protections granted to" subpoenaed media company).

19        ULS had the opportunity to exhaust Jane Doe as an alternative source for seven hours of

20   deposition testimony.  Its failure to pursue proper discovery through her deposition does not

21   overcome the reporter's privilege.  *See e.g., Shoen I*, 5 F.3d at 1296–98 (plaintiffs who failed to take

22   a deposition before trying to penetrate reporter's shield "failed to exhaust the most patently

23   available other source"); *In re Stratosphere Corp. Secs. Litig.*, 183 F.R.D. 684 (D. Nev. 1999)

24   (denying plaintiffs' motion to compel the deposition testimony of a nonparty journalist because

25   plaintiffs had not exhausted all other reasonable sources of information sought, had not deposed all

26   _____

27   [4] Discovery from Jane Doe or from third parties does not waive Jacoby's privilege.  The reporter's
     privilege "belongs to the journalist alone and cannot be waived by persons other than the
     journalist."  *L.A. Mem'l Coliseum Comm'n*, 89 F.R.D. at 494.

28

1    of the defendants, and had not asked any defendant specifically about the article in question).  Jane

2    Doe herself is the best alternative source for information about what *Jane Doe* knew and when she

3    knew it.  If ULS wants more time to depose Jane Doe, it can seek that relief.[5]  Jacoby's own

4    recollections and impressions regarding his communications with Doe are not the only source for

5    this, and are, in fact, a lesser source than admissions from the plaintiff herself.  To the extent ULS

6    now also claims it needs information from Jacoby about purported inconsistencies between the

7    Article and some of the materials on which the Article is based, ULS can analyze any such

8    inconsistencies itself, since it clearly has the Article and the ULS-produced materials in its

9    possession.  ULS has made no showing that it has exhausted itself as a resource.

10           In sum, there are clear alternative sources for all of the information ULS seeks.  ULS's

11   contention that Jacoby—a third party journalist—is the "only" person who can provide information

12   about ULS's Title IX policies or obligations, whether Silva transferred or withdrew from a ULS

13   school, or the content of Jane Doe and Jacoby's communications, is absurd.

14                    **b.  The Deposition Subpoena Is Cumulative with Other Discovery**

15           Having already taken the deposition of Jane Doe and received document productions from

16   Jane Doe including all text messages with Jacoby, ULS's Deposition Subpoena—like the prior

17   documents subpoena—is cumulative.  Cumulative information cannot reach the level of

18   significance required to overcome the reporter's privilege.  *Shoen II*, 48 F.3d at 416.  Where a party

19   to the lawsuit has already produced the materials sought from the third-party journalist, such

20   discovery would be cumulative.  *Wright v. Fred Hutchinson Cancer Rsch. Ctr.*, 206 F.R.D. 679,

21   682 (W.D. Wash. 2002) (denying the defendants' motion to compel in part because plaintiff had

22   already produced materials sought).  ULS already has all the relevant text messages, as produced by

23   Jane Doe.  *See* Jassy Decl. ¶ 5(b).  Jane Doe has already testified extensively about the substance of

24   her communications with Jacoby.  *See* Jassy Decl. ¶ 10, Ex. 8, Tr. 321:2–329:3.  Jane Doe has

25   _____

26   [5] This differs significantly from *Crowe v. County of San Diego*, 242 F. Supp. 2d 740 (S.D. Cal.
     2003).  In *Crowe,* plaintiffs' defamation claim arose from statements made in an aired television
27   interview and the defendant sought the unaired interview footage to contextualize her statements as
     non-defamatory.  *Id.* at 751.  There was no alternative source for the information in *Crowe*, but here
28   there is Jane Doe.

JOINT STATEMENT

1    already confirmed that she did not see the Article before it was published.  *See id.*  Tr. 308:24–

2    309:19.  Critically, she has already testified as to what facts she first learned when reading the

3    Article after its publication.  *See id.*  Tr. 91:8–99:18; 310:1–313:15; 324:16–325:12.  And ULS

4    obviously already has the Article and the materials it produced to Jacoby in response to his FOIA

5    request when he was preparing the Article, so to the extent ULS wants to make comparisons

6    between the Article and those materials it can do so.  All of the substantive topics ULS claims to

7    need in deposition from Jacoby are already in ULS's possession, or can be obtained elsewhere.

8              **c.  The Information Sought Is Not "Clearly Relevant" to a Specific Issue**

9          ULS cannot show that the information sought from Jacoby is "clearly relevant to an

10   important issue in the case."  *Shoen II*, 48 F.3d at 416 (emphasis added).  With respect to its statute

11   of limitations theory, the documents and testimony ULS has obtained in discovery thus far all

12   confirm what Jane Doe alleged in her Complaint—that she learned the basis of her claims reading

13   the Article.  *See* Jassy Decl. ¶ 3, Ex. 2, Ex. 8 Tr. 91:8–99:18; 310:1–313:15; 324:16–325:12.

14   Indeed, a Louisiana state court has already rejected ULS's argument.  Jassy Decl. ¶ 11, Ex. 9.  And

15   it is not at all clear how any purported discrepancies between Jacoby's Article and the underlying

16   materials could bear on Jane Doe's claims against ULS; ULS can probe the accuracy of *Doe's*

17   *allegations* without probing the accuracy of the Article or Jacoby's communications with Doe.  The

18   accuracy of the *Article* is irrelevant.  The party seeking to overcome the privilege "must [make] a

19   showing of *actual* relevance; a showing of *potential* relevance will not suffice."  *Shoen II*, 48 F.3d

20   at 416 (emphases added).  That the information sought might be "useful" is not sufficient.  *Krase v.*

21   *Graco Children Prod.*, *Inc.*, 79 F.3d 346, 351 (2d Cir. 1996).  The claim for which the information

22   is to be used must "virtually rise[] or fall[]" on the admission of the information.  *Id.*

23          ULS can make no such showing here.  Rather, ULS is on a fishing expedition to explore if

24   Jacoby's recollections will corroborate or impeach Jane Doe's testimony.  It seeks discovery on

25   whether Jacoby may have revealed anything in interviews and communications with Jane Doe

26   before May 26, 2021 that might have triggered the statute of limitations for her claims.  *See* Jassy

27   Decl. ¶¶ 5(a), 9.  But, the privilege may not be pierced on speculation that it will lead to

28   impeachment evidence.  *See United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981); *United*

1   *States v. Burke*, 700 F.2d 70, 78 (2d Cir. 1983).  Such supposed inconsistencies are not "clearly

2   relevant," *Shoen II*, 48 F.3d at 416, nor can they otherwise be considered "crucial to [the] case,"

3   *Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981).  ULS's search for purported differences

4   between the Article and materials on which it is based fares no better, as any such differences have

5   no clear bearing on the merits of Jane Doe's claims.[6]

6         **3.   Jacoby's Newsgathering Information Is Also Protected Under Common Law**

7         While the Ninth Circuit has recognized the qualified privilege as constitutionally based,

8   federal common law independently supports a journalist's privilege.  This privilege arises under

9   Federal Rule of Evidence Rule 501, which was adopted after *Branzburg* and provides in relevant

10  part that "privilege(s) … shall be governed by the principles of the common law as they may be

11  interpreted by the courts of the United States in the light of reason and experience."  Fed. R. Evid.

12  501.[7]  As a guide to interpreting Rule 501, the U.S. Supreme Court referred to the "oft-repeated

13  observation that 'the common law is not immutable but flexible, and by its own principles adapts

14  itself to varying conditions.'"  *Jaffe v. Redmond*, 518 U.S. 1, 8 (1996).  The Second Circuit held

15  that, "[a]bsent a federal statute to provide specific instructions, courts which must attempt to divine

16  the contours of non-statutory federal law governing the compelled disclosure of confidential

17  journalistic sources must rely on both judicial precedent and well-informed judgment as to the

18  proper federal public policy to be followed in each case."  *Baker v. F&F Investment*, 470 F.2d 778,

19  781 (2d Cir. 1972).  For example, in *Los Angeles Memorial Coliseum Commission*, 89 F.R.D. at

20  492, a federal court in California held that, "under Rule 501, when a civil action in federal court

21  contains a combination of federal and state claims or defenses, federal courts should evaluate claims

22  of privilege under both state and federal law."  *See also Carushka*, 1989 WL 253565, at *2

23  (applying both federal and state constitutional protections in case with federal and state claims).

24

25  ―――――――――――――
    [6] Nor has ULS treated discovery from Jacoby as a core issue.  In the May 2022 Complaint, Jane

26  Doe credited Jacoby's Article with revealing to her the facts underlying her claims.  *See* Jassy Decl.
    ¶ 3, Ex. 2.  Yet ULS only began pursuing discovery from Jacoby in October 2023.  *See id.* ¶ 4.

27  [7] The underlying case arises under a federal question, Title IX, but also asserts state law claims, so
    state law may also be asserted here.  Fed. R. Evid. 501.

28

1    The Ninth Circuit directs federal district courts to look to state law for guidance when the

2  State has directly addressed the issue.  *Gorenc v. Salt River Project Agric. Improvement & Power*

3  *District*, 869 F.2d 503, 505 (9th Cir. 1989).  Forty states (including California), plus the District of

4  Columbia, have codified the reporter's privilege.  Courts in nine additional states have recognized

5  the journalist's privilege in at least some context in case law.  *See Jacoby I*, ECF No. 11-5 at 6–7

6  (Nov. 29, 2023).  The federal common law, as it looks to state law (here, California law), provides

7  another avenue and layer of protection for Jacoby.  California law provides absolute protection

8  against the disclosure of any type of unpublished information from a journalist in a civil case.  *See*

9  *infra*.

10    **4.  Jacoby Is Further Protected Under California's Shield Law**

11    California's Shield Law protects journalists absolutely from having to "disclose *any*

12  unpublished information obtained or prepared in gathering, receiving or processing of information

13  for communication to the public."  Cal. Const., art. I, § 2(b) (emphasis added).  Under the Shield

14  Law, "unpublished information," which is protected from disclosure in the face of a subpoena,

15  includes *any* "information not disseminated to the public by the person from whom disclosure is

16  sought, whether or not related information has been disseminated and includes, but is not limited to,

17  all . . . data of whatever sort not itself disseminated to the public through a medium of

18  communication, whether or not published information based upon or related to such material has

19  been disseminated."  *Id.*  California's Shield Law applies absolutely in civil cases, providing an

20  "absolute immunity" from contempt in civil cases, and "'***absolute*** protection to nonparty journalists

21  in civil litigation from being compelled to disclose unpublished information[.]'"  *New York Times*

22  *Co. v. Sup. Ct.*, 51 Cal. 3d 453, 456–57, 461–62 (1990) (emphasis added; quoting decision from

23  Court of Appeal, which the Supreme Court affirmed).  "Since contempt is generally the only

24  effective remedy against a non-party witness, the California [Shield Law] grant[s] such witnesses

25  virtually absolute protection" in civil cases.  *Mitchell v. Sup. Ct.*, 37 Cal. 3d 268, 274 (1984).  Such

26  protection extends to Jacoby here.

27    In California, the interests of the press are favored over having civil actions determined on a

28  full record.  *Playboy Enterprises*, *Inc. v. Sup. Ct.*, 154 Cal. App. 3d 14, 27–28 (1984).  Where, as

1  here, the material is sought by a civil litigant, there is no federal or state constitutional right that can

2  be weighed against Jacoby's rights under the California Constitution.  Thus, in civil litigation, no

3  balancing of opposing interests is appropriate because the Shield Law absolutely protects

4  unpublished information from disclosure.  *Id.* at 25.  Under California's Shield Law, Jacoby has an

5  ***absolute*** constitutional right not to disclose "***any*** unpublished information obtained or prepared in

6  gathering, receiving or processing of information" in this civil case, and ULS has no competing

7  constitutional right that could overcome Jacoby's rights.  Cal. Const., art. I, § 2(b) (emphasis

8  added); *New York Times*, 51 Cal. 3d at 456–57, 461–62; *Playboy*, 154 Cal. App. 3d at 25.

9  **B.  ULS Board's Memorandum of Arguments and Legal Authorities**

10  **1.  Overview of ULS's Position**

11  The Board of Supervisors of the University of Louisiana System ("ULS") is a named

12  defendant in a suit filed in the United States District Court for the Middle District of Louisiana,

13  captioned *Jane Doe v. Board of Supervisors of the University of Louisiana System, et al.*, No. 3:22-

14  cv-00338-BAJ-SDJ ("underlying *Doe* suit).[8]  The factual allegations that form the basis of Plaintiff

15  Doe's suit occurred from approximately 2015-2018. However, Plaintiff did not file her suit until

16  May 25, 2022.  As part of its defense, ULS argues Plaintiff Doe's claims prescribed and are time-

17  barred by the applicable statutes of limitations.[9]

18  The *Doe* Complaint asserts the doctrine of *conta non valentum* in anticipation of

19  Defendants' objection to the timeliness of her suit. These allegations were asserted preemptively, in

20  anticipation of Defendants' challenges. Specifically, Doe alleges she learned, for the first time,

21  material facts that form the basis of her lawsuit when, she *read* an article Kenny Jacoby wrote,

22  which was published in *USA Today* on May 26, 2021.[10]  Thus, Doe places at issue the contents of

23  Jacoby's article as well as the timing of her knowledge about the forthcoming article.

24  _____

[8] *See* Complaint filed by Plaintiff on May 25, 2022, attached as Exhibit ULS-1.

25
[9] In Louisiana, "prescription" is a doctrine analogous to the concept of statutes of limitations in
26  other jurisdictions. Thus, a claim that is "prescribed" in Louisiana courts is untimely and time-
barred, as under a statute of limitations.

27  [10] *See* "Six women reported a Louisiana college student for sexual misconduct. No one connected
the dots." USA Today, published May 26, 2021, attached as Exhibit ULS-2.

28

1   ULS has engaged in extensive discovery to obtain information that may support its defense

2   that Doe's claims are time-barred.[11] Doe testified that she spoke or corresponded with Jacoby on

3   multiple occasions about the article before it was published. Doe confirmed during her deposition

4   she could not recall (1) what she discussed with Jacoby in preparation of the article, and (2) when

5   these discussions about the material facts published in the article took place.[12] Because Doe has no

6   recollection of these conversations, her testimony cannot establish what topics she discussed with

7   Jacoby before the article was published. In short, no evidence exists to confirm the substance of her

8   communications with Jacoby.

9   Doe also asserts claims against ULS under Title IX. Doe's Complaint references statements

10   from the Article that are known to be incorrect regarding the applicable Title IX policies ULS had

11   in place at the time of the underlying incidents. These statements are directly relevant to ULS's

12   defenses to Doe's Title IX claims. This is an issue that can only be addressed during Jacoby's

13   deposition and was not raised in ULS's prior subpoena.

14   ULS issued notice for Jacoby's deposition because Jacoby is the only available source who

15   can provide ULS with information to address these issues. The information to be obtained from

16   Jacoby's deposition is relevant because it is central to the issue of prescription and ULS's defenses

17   to Doe's Title IX claims. It is not cumulative because Doe, the only other source who could have

18   information about the issues to be addressed in Jacoby's deposition, has testified she has no

19   recollection of what Jacoby told her before the article was published. Additionally, Doe is

20   challenging her supplemental deposition and the deposition of Jacoby in the underlying matter.

21   ULS also requests Jacoby's deposition so that it can obtain information about the published

22   information in his article. Jacoby obtained numerous documents from ULS, ultimately used in the

23   published article. His published article mischaracterized or inaccurately portrayed information

24   received from ULS. Doe's Complaint cites this misinformation to support her claims against ULS.

25   _____

26   [11] ULS files exhibits in support of this pleading pursuant to the Consent Protective Order and Confidentiality Agreement, filed into the record of the underlying *Doe* suit as R. Doc. 51, and attached hereto as Exhibit ULS-3.

27   [12] *See e.g.,* excerpts of the Deposition of Jane Doe at pgs. 305, 307, 324, and 327-328, attached as Exhibit ULS-4.

28

Accordingly, ULS seeks to depose Jacoby, the source of the allegations in Doe's Complaint, to confirm the inaccuracies and allow ULS to defend itself.

Finally, Jacoby seeks a protective order "regarding the deposition precluding any inquiry and any need to furnish any testimony or information constituting or concerning Jacoby's unpublished newsgathering materials, sources of information, confidential information, or newsgathering techniques." The deposition can go forward without inquiring into unpublished materials. Depending on the definition of the scope of "confidential information," this too lends the deposition possible. Doe and ULS are known sources. Jacoby used information that they provided in his published article, which forms the basis of Doe's civil suit. ULS only seeks to depose Jacoby with regard to information provided to and learned from Doe and ULS, as reflected in the published article. Such seems to be within a scope to which Jacoby agrees above.

### 2. Procedural Background

ULS previously issued a subpoena for documents from Jacoby. This Court granted ULS's Motion to Quash that subpoena. (R. Doc. 17). This Court found the information requested in the subpoena was cumulative because Doe already produced some of the text messages she exchanged with Jacoby and because Jacoby produced a declaration to state the timing of his first communications with Doe.[13]

The Court found that ULS already has all relevant text messages between Jacoby and Doe. (R. Doc. 17, p. 5). Respectfully, the evidence cited to support this conclusion shows only that the parties discussed ULS's doubt that Doe produced all her communications with Jacoby, and Doe's claim that she possibly lost records of her communications when she obtained a new phone. The referenced evidence only establishes the date of the earliest contact between Jacoby and Doe. It does not show what other communications occurred or the content of those communications. Such information remains unknown.

---

[13] Jacoby's Declaration did nothing more than authenticate his article and provide the date of his first contact with Doe. No content or context for his communications with Doe was provided in Jacoby's Declaration or any other discovery.

JOINT STATEMENT

Discovery has not resolved these issues. Plaintiff's deposition testimony merely echoes the allegations in her Complaint. When asked about her communications with Jacoby, Doe testified:

> Q:   …What was communicated between yourself and Kenneth Jacoby?
> A:   You know, I don't recall exactly what it was. I know that we focused on - - he asked me for my experience, and I – told him. So that was - - that's what we focused on.
> Q:   Okay. Did he provide you with any information?
> A:   As I'm sitting here right now, I - - I don't recall, yeah.
> Q:   Okay. Is it possible that he might have provided you with information?
> A:   It's possible.
> Q:   Okay. Was there any new information you learned when you read his article?
> A:   Yes.[14]

Doe testified she obtained new information about her claim when she read the article. If she obtained "new" information, then she also had information about the contents of the article before she read the article on its date of publication, i.e., previously-known or "old" information. Evidence confirms Jacoby arranged at least two telephone conversations with Doe to discuss issues related to his article before its date of publication.[15] Doe's testimony confirms she cannot recall what she discussed with Jacoby during these conversations.

The information obtained in discovery does not confirm or refute Doe's allegation that the article provided the basis for her claims. Because Doe testified she could not recall what information Jacoby provided her before it was published, this information can only be obtained from Jacoby. Thus, ULS issued a subpoena for his deposition.

ULS does not seek the same information requested in its initial subpoena. ULS seeks to depose Jacoby to address issues that include the following: the content of his communications (written and verbal) with Doe; his published work in the Article itself; the information ULS provided him versus what was published in the Article; what information he provided Doe about the article before it was published; whether the information he provided Doe about ULS was correct; and whether the information he provided Doe about ULS was different than what was actually published. These issues are related to the information published in his article, which Doe identified

---

[14] *See* Jane Doe Dep. at 324, ll. 3-18, attached as Exhibit ULS-4.

[15] *See* copy of message, attached to Giering Decl. as Ex. ULS-5, sent from Jacoby to Doe and additional copy of message sent from Jacoby to Doe, attached as Ex. ULS-6.

as the foundation upon which the claims in her lawsuit are based. For the reasons outlined below, this Court should deny Jacoby's motion for protective order and order Jacoby to appear for his deposition at a time and place to be agreed upon by the parties.

### 3.   Jacoby's Deposition Should be Ordered to Establish What Information He Relayed to Doe before His Article was Published.

Jacoby asserted the journalist's privilege in response to ULS's deposition notice. The journalist's privilege under federal law is qualified, not absolute. The Ninth Circuit holds that when, as here, "the information sought is not confidential, a civil litigant is entitled to request discovery, notwithstanding a valid assertion of the journalist's privilege by a nonparty only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." *Shoen v. Shoen*, 48 F.3d 412 (9th Cir.1995) ("*Shoen II*"). All three elements are established here such that ULS's right to the requested discovery trumps any assertion of the journalist privilege.

Doe testified that she is the woman in Jacoby's published article[16] who alleges she was assaulted by Victor Daniel Silva at Louisiana Tech University. She is a known source, and her identity is not at issue. Doe's Complaint directly references the Article and credits the Article as a source of her knowledge and allegations used to file a civil suit against the defendants in the underlying matter.[17]

During her deposition, Doe repeatedly identified Jacoby as the only source other than her lawyer regarding the allegations in her lawsuit. For example, the Complaint alleges that it was a "fluke" that an administrator at the University of Louisiana-Lafayette ("ULL," part of the Univ. of La. System) learned about Silva's prior arrest in Baton Rouge for sexual misconduct.[18] When asked about her support for this allegation, Plaintiff testified as follows:

> Q:   Okay. So you don't have any information independently?
> A:   Independently, no.
> Q:   Okay. Thank you.

---

[16] Ex. ULS 2.

[17] *See, e.g.*, Complaint, at ¶ 128, Ex. ULS-1.

[18] *See* Complaint, at ¶5, Ex. ULS-1.

JOINT STATEMENT

Your complaint goes on to say that "certainly not through any formal notification from LSU or its Title IX office."

Do - - what do you mean by "formal notification"?

A:   Again, this is information that I do not have independently or firsthand. This is information that I received from Kenny Jacoby, the journalist, and my attorney.

Q:   Okay. What evidence do you have that ULL never followed up with LSU or Baton Rouge law enforcement for additional information concerning Silva?

A:   I can only speak to what I experienced with Ruston PD and Louisiana Tech University. That's information that Kenny Jacoby and my attorney would have known.[19]

Doe also testified that Jacoby provided her with information relevant to the underlying matter before his article was published.[20] ULS seeks Jacoby's deposition to determine what topics published in the article were discussed between Doe and Jacoby before the article was published, when Jacoby provided Doe with such information, and to question him as to the source of specific allegations in Doe's Complaint (as quoted above).

Jacoby and Doe first communicated in December 2020. However, the content of the communications is not known. Doe testified she cannot recall what information Jacoby gave her when they initially spoke.[21] Doe also confirmed she cannot recall any details about her communications with Jacoby before the article was published.[22] In light of Doe's inability to provide this information, Jacoby is the only source for this information. ULS requests Jacoby's deposition to obtain the timing and content of information Doe was unable to recall.

In *Crowe v. Cnty. of San Diego*, 242 F. Supp. 2d 740 (S.D. Cal. 2003), a case similar to the circumstances here, the court applied the test set forth in *Shoen II* and found that the federal journalist's privilege did not apply to preclude discovery of a videotaped interview from CBS Broadcasting, Inc. In *Crowe*, the defendant issued a subpoena to obtain a videotaped interview from CBS Broadcasting, Inc., recorded in support of a report that aired on "48 Hours." The aired portion

---

[19] *See e.g.*, excerpts of the Deposition of Jane Doe at pg. 93, ll. 5-25, attached as Exhibit ULS-4.

[20] *See* Jane Doe Dep. at 324, ll. 3-18, Ex. ULS-4.

[21] *See* excerpts from the Deposition of Jane Doe at pg. 327, ln. 16- pg. 328, ln. 14, attached as Exhibit ULS-4.

[22] *See* excerpts from the Deposition of Jane Doe at pg. 324, ll. 3-15, attached as Exhibit ULS-4.

1    of the video lasted three minutes, but the entirety of the video lasted approximately three hours. *Id*.

2    at 743. The defendant requested production of the entire video to defend the defamation claims

3    asserted against her. CBS asserted the reporter's privilege at issue in this case in response.

4         The Court found that the video was clearly relevant to the underlying case because it would

5    provide context and content of the statements made to the reporter during the interview. This

6    information was relevant to the defendant's primary defense to plaintiff's claim. *Id*. at 751. The

7    Court also found that the videotape was the only source available to obtain the precise content of the

8    subject interview, which was needed to defend the claim at issue. *Id*. Further, the evidence was

9    noncumulative because no other evidence existed to show the precise content and context of the

10   communication at issue. *Id*. at 752. Thus, the Court properly found that the journalist's privilege

11   could not apply under *Shoen II*.[23]

12        The same result should follow here — where ULS requests Jacoby's deposition; not the

13   production of any unpublished materials. ULS's request for Jacoby's deposition meets the test set

14   forth in *Shoen II* such that this Court should order Jacoby to appear for his deposition.

15           **a.**     **Information to be obtained from the deposition is unavailable from other**

16             **sources**.

17        ULS seeks to depose Jacoby to learn what topics published in his article were discussed

18   during his communications with Doe before the article was published and when. Doe and Jacoby

19   are the only witnesses who can offer this testimony. This information is relevant to the underlying

20   matter and would be subject to production if it could be obtained from Doe. Unfortunately, Doe

21   testified she cannot recall when she spoke to Jacoby or what information Jacoby provided her about

22   his investigation during their conversations and/or interviews for the article. Like the situation

23   presented in *Crowe*, *supra*, the content and context of the subject communication cannot be shown

24   without Jacoby's testimony.  Jacoby is the only source from whom testimony about these issues can

25   be obtained, and the first *Shoen II* factor is met.

26

27   [23] This Court did not address the *Crowe* case in its prior ruling. Its holding shows that Jacoby's
     assertion of the journalist's privilege also should not apply here.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b.      Information to be obtained from the deposition is not cumulative.**

The information ULS seeks to obtain from Jacoby's deposition is not cumulative of any other available information. Because Doe repeatedly testified that only Jacoby and/or her lawyer can testify to the information sought and the information has not been and cannot be obtained from anyone else, Jacoby's testimony is not cumulative.

Jacoby issued a declaration in response to the subpoena duces tecum issued to him. The declaration did nothing more than authenticate his article and confirm that he first contacted Doe in December 2020. His declaration is silent as to content provided to Doe and later published in the Article. Evidence shows that Doe exchanged text messages, phone conversations and/or emails with Jacoby before the Article was published. Thus, Doe admitted she communicated about the Article with Jacoby before it was published, but she did not provide evidence of the content of the information exchanged with Jacoby.

No other source exists for this information. In *Shoen II*, the court found the requested material, audiotapes and materials from the journalist's interviews with the defendant, was cumulative because the jury could make inferences from the defendant's testimony about ill-will toward the requesting party. See *Crowe*, 242 F.Supp.2d at 751-52, citing *Shoen II*. No similar inferences may be made here because Doe testified that she has no recollection of the substance of conversations with Jacoby before the Article was published.

No evidence other than testimony from Jacoby exists to show what information Jacoby provided Doe before Jacoby's article was published. Therefore, it cannot be cumulative of other evidence obtained in this matter, and the second *Shoen II* factor is met.

**c.      The information to be obtained in the deposition is clearly relevant to important issues in this case**.

Whether Doe's claims are time-barred or "prescribed" is a critical and threshold issue in the underlying case. The information to be addressed in Jacoby's deposition is unquestionably relevant to this issue because Jacoby can establish when Doe obtained knowledge of the material facts supporting her claims. In her Complaint, Plaintiff alleged facts for the express purpose of

circumventing the conclusion that her suit was time-barred or prescribed. ULS is entitled to discover information to support its defense that Doe's claims are stale.

Doe claims that she learned about the material facts that form the basis of her lawsuit when she *read* Jacoby's article on May 26, 2021.[24] Thus, Doe agrees that the material facts presented in the Article form the basis of her suit. Doe also testified that she spoke with Jacoby about the Article *before* the article was published.[25] However, only Jacoby can testify as to those conversations.

ULS has requested Jacoby's deposition to obtain this information, which is relevant to analyze the overlap between the information published in Jacoby's article and the information discussed with Jacoby before the article was published. This information is required to allow Defendant to establish a timeline for when Doe obtained knowledge of the material facts that she claims form the basis of her lawsuit. Jacoby's deposition is imperative to establish ULS's defenses in this case and is clearly relevant to the issue of whether Plaintiff's claims are time-barred or prescribed, satisfying the third *Shoen II* factor. Jacoby's testimony also is relevant to ULS's defense of Doe's Title IX claims, for the reasons outlined below.

**4.    Jacoby's Deposition Should be Ordered to Audit the Accuracy of the Information Included in His Article.**

As she testified at her deposition, Doe relied upon information published in Jacoby's article to support her claims against the defendants in the underlying matter. Some of the "facts" presented in Jacoby's article, and reproduced in Doe's Complaint, are inaccurate and/or misrepresent the evidence. Defendants are entitled to conduct discovery that will allow them to refute Doe's claims regarding the veracity of the "facts" Doe relies upon. Therefore, Jacoby's deposition is necessitated to show that Jacoby's article, and therefore Doe's allegations, are not supported by evidence or are erroneous.

Prior to the publication of his article, Jacoby requested documents from ULS and the other Defendants, to which they responded. Jacoby used the information as a source or reference for his

---

[24] *See* Complaint and Jury Demand filed by Plaintiff on May 25, 2022, at ¶10, Ex. ULS-1.

[25] *See e.g.*, excerpt from Deposition of Jane Doe at pgs. 305-308, Ex. ULS-4.

JOINT STATEMENT

article. Jacoby's article claims ULS failed to meet its obligations under Title IX, and Doe cited Jacoby's article in support of the Title IX claims she asserts against ULS. However, review of Jacoby's article shows that the Article does not accurately portray the information included in the records that defendants produced.

As one example, Jacoby's article states that Silva *transferred* from ULL to Louisiana Tech University and then back to ULL after the incident at Louisiana Tech.[26] Citing Jacoby's article in her Complaint, Doe alleges "UL Lafayette allowed Silva to *transfer* to Tech" and ULS "permitted Silva to *transfer* back to UL Lafayette…"[27] However, Silva was not "allowed to transfer" and/or did not "transfer" from Louisiana Tech to another school after his alleged assault of Doe. He resigned shortly after Doe reported her alleged assault to the university.[28]

A student withdrawal and a student transfer are different things.[29] While Jacoby may suggest that this distinction is trivial, the difference is important because a university's role differs when a student seeks to transfer to another university versus when a student resigns and no longer has any affiliation with that university, and it is unknown what the former student's plans are. Significantly, the applicable policies differ between what is required of the university when a student against whom charges or a report has been asserted seeks to transfer to another university, versus when that same student seeks to resign. Based upon Jacoby's article reporting that Silva transferred, Doe alleged that ULS failed to follow proper procedure and allowed Silva to transfer from Louisiana Tech to ULL. However, the policies and procedures applicable to a transferring student (which entails a transcript request) are not triggered and do not apply when a student resigns (which does not entail a transcript request) from the university.

---

[26] *See* "Six women reported a Louisiana college student for sexual misconduct. No one connected the dots." *USA Today*, published May 26, 2021, Ex. ULS-2, at pg. 2, 7, 14, and 24.

[27] *See*, e.g., Complaint, at ¶ 128 attached as Exhibit ULS-1.

[28] *See e.g.*, excerpt from Deposition of Jane Doe at pgs. 313-314, Ex. ULS-4. *See also* copy of Silva's resignation card, attached as Exhibit ULS-7.

[29] See excerpt from 30(b)(6) Dep. of ULS, at pg. 10-11, attached as Exhibit ULS-8.

JOINT STATEMENT

1       Jacoby received information from ULS evidencing that Silva resigned from Louisiana Tech

2   almost the same day that Doe reported the alleged assault.[30] His published article erroneously

3   reported that Silva transferred to another school in the ULS system after Doe reported the incident.

4   The article includes other inaccuracies and misrepresentations of fact ULS intends to address during

5   Jacoby's deposition. ULS has requested Jacoby's deposition so that it can discover information

6   unique to ULS and its Title IX defenses and examine these issues with the only person who can

7   testify to the information — Jacoby.

8       Jacoby framed the issues presented in his article in a manner that inaccurately presents the

9   facts. Doe relied upon Jacoby's misrepresentations to support her claims against ULS in filing her

10   Complaint. Therefore, proving the inaccuracy of the information published in Jacoby's article is

11   both relevant and critical to ULS's defenses in the underlying matter.  Further, proving that Jacoby

12   shared the same inaccurate information with Doe prior to publishing it is relevant to the issue of

13   prescription. ULS should be afforded the opportunity to depose Jacoby, the sole author of the

14   Article, so that it can examine these issues and obtain evidence to dispute the allegations against it.

15   Accordingly, this Court should deny Jacoby's motion and order Jacoby to appear for his deposition.

16   **5.     Summary of ULS's Position**

17       Jacoby's deposition should be ordered because the information sought is: (1) unavailable

18   despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant

19   to important issues in the case.

20

21

22

23

24

25

26

27   ---

[30] *See* copy of Silva's withdrawal card, attached as Exhibit ULS-7.

28

JOINT STATEMENT

1  DATED:  January 17, 2024                    JASSY VICK CAROLAN LLP

2

3                                              ___/s/ Jean—Paul Jassy_____

4                                              JEAN-PAUL JASSY
                                               Counsel for Moving Party and
5                                              Non-Party Journalist
                                               KENNETH JACOBY
6

7  DATED:  January 17, 2024         /s/ Vickie P. Whitney (as authorized on January 17, 2024).

8

9                                              *Vickie P. Whitney*

10                                             ROB BONTA
                                               Attorney General of California
11                                             JULIE A. MALONE
                                               Supervising Deputy Attorney General
12
                                               VICKIE P. WHITNEY
13                                             Deputy Attorney General

14                                             AND

15                                             KEOGH, COX & WILSON, LTD.

16                                             *Catherine Giering*
                                               ANDREW BLANCHFIELD*
17                                             Louisiana State Bar No. 16812

18                                             CATHERINE GIERING *
19                                             Lousiana State Bar No. _26495
                                               *Pro Hac Vice Admission Pending
20

21                                             Attorneys for Respondent
                                               BOARD OF SUPERVISORS OF THE
22                                             UNIVERSITY OF LOUISIANA SYSTEM

23

24

25

26

27

28

                                    -26-                           JOINT STATEMENT