UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH JACOBY, | No. 2:23-cv-02848 KJM AC |
| Moving Party, | |
| v. | ORDER |
| BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA SYSTEM, | |
| Responding Party. | |

This case was opened on December 6, 2023, with the filing of a motion for protective order regarding a deposition subpoena directed to journalist Kenneth Jacoby. ECF No. 1. That motion is now before the court. This matter is related to a miscellaneous case that was previously opened in order for the court to hear Jacoby's November 13, 2023 Motion to Quash a documents subpoena that had been served upon him on October 31, 2023 by the Board of Supervisors of the University of Louisiana System ("ULS"), which is a defendant in the underlying case Jane Doe v. Board of Supervisors of the University of Louisiana System, et al., No. 22-cv-00338-BAJ-SDJ, pending in the U.S. District Court for the Middle District of Louisiana. Jacoby v. Board of Supervisors of the University of Louisiana System, 2:23-mc-00403-KJM-AC ("Jacoby I"). Jacoby is not a party to the underlying case. A joint statement regarding the instant motion was filed on January 18, 2024 (ECF No. 9) and the matter was heard via Zoom court on January 31, 2024. For the reasons set forth below, the motion for a protective order is GRANTED.

**I.  Relevant Background**

The moving party, Kenneth Jacoby, is a journalist who wrote an article published in USA Today on May 26, 2021 entitled "Six women reported a Louisiana college student for sexual misconduct.  No one connected the dots." ("the Article").  ECF No. 9 at 7-8.  A year after the Article's publication, Jane Doe, one of the women who reported Victor Daniel Silva to ULS for assault, filed her lawsuit in the United States District Court for the Middle District of Louisiana against The Board of Supervisors of the University of Louisiana System ("ULS") and others, asserting claims for Title IX and negligence under Louisiana state law.  One of USL's defenses in the underlying action is that the claim is time-barred, raising the issue of when Doe learned about the facts giving rise to her claims.  Id.

Doe claims she learned about the material facts that form the basis of her lawsuit, for the first time, when she read Jacoby's article on May 26, 2021.  Jacoby I at ECF No. 11 at 29.  However, at her deposition, Doe testified that she spoke with Jacoby about the article and exchanged written communication with him before the article was published.  Id. at 30.  At issue in Jacoby I was a documents subpoena issued by ULS to Jacoby to obtain information regarding what Doe discussed with Jacoby prior to the article's publication.  ULS sought the documents in order to analyze the overlap between the information published in Jacoby's article and the information discussed in Doe's communications with Jacoby before the article was published.

With respect to Jacoby I, following meet and confer efforts, "ULS agreed to narrow the scope of the subpoena, which contains 28 document requests to non-party Jacoby, to include only the following (1) notes from conversations between Jacoby and Jane Doe from December 2018 to May 26, 2021; (2) text messages between Jacoby and Jane Doe from December 2018 to May 26, 2021; and (3) an affidavit from Jacoby authenticating copies of the production and providing a context for the production."  ECF No. 11 at 6.  Jacoby prepared a declaration (Jacoby I at ECF No. 11-1) and proposed it to ULS on November 28, 2023, but ULS found the declaration insufficient and maintained its request for the three items noted above.  The resulting impasses necessitated a motion to quash that subpoena.

////

Jacoby moved to quash the documents subpoena on the grounds that it directly contravened his rights as a journalist under the robust protections of the U.S. Constitution, California Constitution, California state law, and the common law. Jacoby I at ECF No. 11 at 8. In evaluating the motion, the court relied on the Ninth Circuit's interpretation the Supreme Court case Branzburg v. Hayes, 408 U.S. 665 (1972) as establishing a qualified privilege for journalists against compelled disclosure of information gathered in the course of their work. Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993). "Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.'" Id. at 1292 (quoting Herbert v. Lando, 441 U.S. 153, 183 (1979) (Brennan, J., dissenting) (internal quotation omitted)). The court noted that the Ninth Circuit went on to hold that compelled disclosure of unpublished newsgathering material is only permissible "upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important issue in the case." Shoen v. Shoen ("Shoen II"), 48 F.3d 412, 416 (9th Cir. 1995).

In Jacoby I, the undersigned found the subpoena did not meet the standard necessary to invade Jacoby's journalistic protections under the First Amendment. First, the court concluded ULS had not made a sufficient showing that the sought-after discovery was non-cumulative. Jane Doe had already produced text messages between herself and Jacoby, which date no earlier than December 10, 2020. Jacoby I at Jassy Decl. ¶ 9(e). Further, the court concluded Jacoby's declaration resolved any uncertainty regarding the first dates and means of contact; Jacoby confirmed in a sworn declaration that his December 9, 2020 email, December 10, 2020 phone call, and December 10, 2020 text messages were his first communications with Jane Doe. Jacoby I at Jacoby Decl. ¶ 3.

The undersigned also concluded that the rationale presented by ULS that Jacoby's declaration was insufficient was speculative. ULS contended that it recently deposed another woman identified in the article, Andie Richard, who confirmed that she communicated with

3

1  Jacoby approximately three months before the article was published, and while "ULS recognizes
2  that Doe and Richard are different witnesses . . . because Doe and Richard were both sources for
3  the article, Defendant anticipates that Jacoby provided both sources with similar information
4  about the contents of his article." Jacoby I at ECF No. 11 at 24-25.  The undersigned found this
5  speculative argument was no reason to discount Jacoby's sworn statement regarding the earliest
6  date of his communication with Doe,  nor did it cast legitimate doubt on the truth of Doe's
7  deposition.  The court noted that Doe had already testified extensively about the substance of her
8  communications with Jacoby and had already confirmed that she did not see the article before it
9  was published.  Jacoby I at Jassy Decl. ¶ 13, Ex. 6, Tr. 321:2–329:3, 308:24–309:19.  Further, the
10 court noted that ULS already had all the relevant text messages between Jacoby and Doe, as
11 produced by Jane Doe.  Jacoby I at Jassy Decl. ¶ 9(e).  Based on this analysis, the undersigned
12 concluded the third-party document subpoena to Jacoby was unnecessary and cumulative.

13     The court, in conclusion, noted in Jacoby I that to the extent ULS argues that the specifics
14 of the conversation are insufficiently detailed as obtained from the available sources and these
15 potential additional details are necessary to the case, the argument was unpersuasive because the
16 documents and testimony ULS had obtained in discovery thus far all confirm what Jane Doe
17 alleged in her Complaint — that she learned the basis of her claims reading the Article.  As
18 explained in Shoen II, the party seeking to overcome the journalistic privilege "must [make] a
19 showing of actual relevance; a showing of potential relevance will not suffice."  48 F.3d at 416
20 (emphasis added).  Thus, the motion to quash was granted and the case was closed.  Jacoby I at
21 ECF Nos. 17, 18.  Now, Jacoby moves for a protective order from a second third-party subpoena
22 issued by ULS, this one seeking deposition testimony.

### II.     Applicable Legal Standards

24     Federal Rule of Civil Procedure 45 permits a party to issue a "subpoena commanding the
25 person to whom it is directed to attend and give testimony or to produce and permit inspection of
26 designated records or things." Fed. R. Civ. P. 45(a)(1)(C).  The recipient may object to a
27 subpoena, or move to quash or modify it.  Fed. R. Civ. P. 45(c)(2), 45(c)(3).  "The district court
28 has wide discretion in controlling discovery" and "will not be overturned unless there is a clear

abuse of discretion." Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir.1988). "[T]he court that issued the subpoena ... can entertain a motion to quash or modify a subpoena." S.E.C. v. CMKM Diamonds, Inc., 656 F.3d 829, 832 (9th Cir.2011).

District courts may issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," that would result from the disclosure of certain discovery. Fed. R. Civ. P. 26(c)(1)(A). The person seeking a protective order has the burden of proving that good cause exists for the entry of the order. Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211 (9th Cir. 2002). Much like Rule 45(d)(3), "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

### III. Discussion

As a preliminary matter, the court notes that Jacoby takes the position that "the doctrine of issue preclusion bars ULS from re-litigating issues already decided between ULS and Jacoby, even if the issue now arises in the context of a deposition subpoena rather than a document subpoena." ECF No. 9 at 10. The court is unpersuaded that issue preclusion applies. The order in Jacoby I held that ULS had failed to meet is burden under Shoen II as to the documents sought, but the court did not make an unequivocal ruling that the asserted journalistic privilege cannot, as matter of law, be overcome under any circumstances in this case. The deposition subpoena now at issue was issued separately from the document subpoena at issue in Jacoby I, and ULS is entitled to attempt to establish the Shoen II factors required to invade journalistic privilege under the specific circumstances presented by the deposition subpoena itself. Having declined to bar the deposition subpoena on preclusion grounds, the undersigned turns to the merits.

Upon careful consideration of the arguments presented in the briefing and at oral argument, and the court concludes that ULS has not met its burden under Shoen II to depose Jacoby either by oral or written deposition. The strongest argument for deposition relates to ULS's potential statute of limitations defense. While the court agrees that both the timing and the content of the conversations between Jacoby and Doe are potentially relevant to ULS's argument

that Doe's claims are time-barred in whole or in part, ULS has not adequately demonstrated that the proposed deposition is non-cumulative or that the sought-after information is unavailable from other resources. Shoen II, 49 F.3d at 416. The primary argument advanced by ULS is that Jacoby's testimony is necessary because he was the only other party to the conversations between himself and Doe, and Doe does not fully recall the content of the conversations. ECF No. 9 at 21. However, while the portions of Doe's depositions excerpted by ULS do contain instances of Doe stating she could not recall the exact discussions between herself and Jacoby, Doe did provide a substantive response regarding general topics they discussed on page 324 and 325 of her deposition. ECF No. 12 at 16-17 (pages 324 and 327 filed under seal, pages 325 and 326 omitted)[1].

ULS had the opportunity to depose plaintiff and could have probed further in plaintiff's deposition, sought to re-open the deposition, or to followed up with written interrogatories as to aspects of the conversations with Jacoby that Doe did not recall during her deposition. The court does not accept ULS's argument that it could not have probed further because Doe stated she could not recall certain information, and that there was no path forward from there. That argument misstates the record of the deposition and ignores the many paths available in the underlying case to obtain additional discovery from a party. Jacoby has shown that his journalistic privilege remains intact because ULS has not demonstrated that the proposed deposition is noncumulative, or that the sought-after information it is unavailable from the plaintiff in the underlying action, on the issue of when Jane Doe discovered her causes of action.

As to issues other than the statute of limitations, Jacoby cannot plausibly be considered a witness with potential testimony that is "clearly relevant to an important issue in the case." Shoen II, 48 F.3d at 416. Jacoby was not a participant in or percipient witness to any of the events described in the complaint. Neither Jacoby's investigation of and writing about relevant events, nor his interpretation (or misinterpretation) of public records, is itself relevant to ULS's liability in the underlying lawsuit. Accordingly, his deposition cannot be justified under Shoen II as to

---

[1] The full deposition was filed with the court for in camera review, including pages 325 and 326.

issues other than when Jane Doe discovered her causes of action.

For all these reasons, ULS may not move forward with the deposition subpoena.

### IV. Conclusion

The motion for a protective order (ECF No. 1) is GRANTED.

DATED: February 1, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE